# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ANIBAL SANTE ROJAS (A-No. 245-973-252),

Petitioner,

v.

CHESTNUT, et al.,

Respondents.

Case No. 1:26-cv-03154-JLT-CDB

ORDER GRANTING IN PART THE PETITION FOR WRIT OF HABEAS CORPUS; DENYING THE MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT; AND DIRECTING RESPONDENTS TO PROVIDE SUBSTANTIVE BOND HEARING

(Docs. 1, 2)

## I.   INTRODUCTION

Before the Court is Anibal Sante Rojas's request for a temporary restraining order (Doc. 2), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) The government filed a response to the TRO and the underlying petition, asserting that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), a legal position that this Court has rejected repeatedly. (*See* Doc. 8 at 1 n.1.) For the reasons set forth below the Court, **GRANTS IN PART** the habeas petition.[1]

---

[1] When the Court set a briefing schedule on the motion for TRO, it ordered the parties to state their position as to whether the motion for TRO should be converted to a preliminary injunction without further briefing, whether the parties sought a hearing, and whether the parties sought additional briefing on the habeas petition. (Doc. 4.) Neither party requests a hearing and both parties indicate that they do not need additional briefing on the merits of the petition. (Doc. 8 at 2; Doc. 9 at 1.) Considering this and given that Respondents had notice and opportunity to respond, the Court decides this case on the underlying habeas petition.

## II.  LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III.  FACTUAL BACKGROUND

Petitioner is from Peru, and he entered the United States unlawfully on April 14, 2024, when he was encountered by immigration officials. (*See* Doc. 8-1 at 4; Doc. 2-3 at 22.) On April 15, 2024, Petitioner was issued a Notice to Appear charging him as removable under the Immigration and Nationality Act § 212(a)(6)(A)(i) and was released on an Order of Release on Recognizance. (*See* Doc. 8-1 at 6; Doc. 2-3 at 22.) One of his conditions of release was that he "not violate any local, State, or Federal laws or ordinances." (Doc. 2-3 at 22.) Petitioner is not subject to a final order of removal and has a pending asylum application before the immigration court.[2] (*See* Doc. 2-1 at 3; *see also* Doc. 2-3 at 7.)

On January 19, 2026, Petitioner was arrested for suspected public intoxication and was subsequently released. (*See* Doc. 2-4 at 5.) Petitioner claims that upon his release, he asked law enforcement if he had any charges or upcoming hearings related to his arrest and officers indicated he had none. (*Id.*) On February 27, 2026, Petitioner was charged with misdemeanor identity theft and giving false information to a police officer under California Penal Code §§ 530.5(a) and 148.9(a) in connection with that arrest. (*See* Doc. 8 at 2; Doc. 8-1 at 9–10.) That day a Notice to Appear for Misdemeanor Arraignment was sent to the Petitioner. (Doc. 8-1 at 10.) On March 30, 2026, Petitioner was due for arraignment on the above charges at the Superior

---

[2]  Upon entering Petitioner's A-Number into EOIR's website, the automated case information indicates that Petitioner's immigration case was opened on or around April 18, 2024, and is currently pending. EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseinformation (last visited May 6, 2026).

Court of California, County of San Mateo, but failed to appear.[3] (*Id*. at 10–11.) On April 9, 2026, the San Mateo County Court issued a warrant for Petitioner's arrest, which appears to be outstanding. (*Id*. at 11; *see also* Doc. 9 at 2.)

On April 21, 2026, Petitioner arrived at Immigration and Customs Enforcement Enforcement and Removal Operations in San Francisco for a scheduled check-in appointment, in compliance with his Order of Release on Recognizance. (Doc. 8-1 at 4.) At the appointment, deportation officers conducted a custody redetermination interview due to Petitioner's "qualifying criminal charges under the Laken Riley Act." (*Id*.) Petitioner "freely admitted that he was arrested for identity theft related charges on 1/19/2026 by local police officers." (*Id*.) ICE deportation officers then arrested the Petitioner. (*Id*.; *see also* Doc. 2-3 at 34.) Petitioner was transferred to California City Detention Center, in California City, California where he currently remains. (Doc. 2-1 at 4.)

## IV.   DISCUSSION

The government filed an opposition to the habeas petition, arguing that Petitioner's detention is "mandatory" under expedited removal procedures set forth at 8 U.S.C. § 1225(b). (Doc. 8 at 1 n.1.) Respondents offer little to rebut Petitioner's due process claim and do not provide any justification for detaining Petitioner without a bond hearing. (*Id*.) Respondents make no effort to distinguish this current case from the numerous cases issued by the undersigned, finding this legal position to be incorrect and the detention unlawful. *J.S.H.M. v. Wofford*, No.

---

[3] There is some discrepancy regarding ICE's decision to detain the Petitioner. (*See* Doc. 8 at 2; Doc. 9 at 2.) Respondents claim that "Petitioner did not attend his arraignment on March 30th or his April 9th bond setting and so the criminal court issued a warrant for his arrest." (Doc. 8 at 2.) Respondents suggest that ICE "detained Petitioner under the authority of a warrant" due to Petitioner's "failure to appear" at his arraignment. (*Id*.) Respondents attach a copy of the case information pulled from the Superior Court of California, County of San Mateo's website which indicates that Petitioner failed to appear for his criminal arraignment on March 30, 2026, and that a warrant for his arrest was issued April 9, 2026. (Doc. 8-1 at 10–11.) However, to the extent Respondents suggest that ICE arrested the Petitioner based on this outstanding criminal warrant for failing to appear at his arraignment, (*see* Doc. 8 at 1–2), the record indicates otherwise. Specifically, the I-213 indicates that Petitioner "was arraigned on the above charges at the Superior Court of California, County of San Mateo on 03/30/2026." (Doc. 8-1 at 4.) As such, it appears that deportation officers believed Petitioner had attended his criminal arraignment but nonetheless arrested him because they believed the identity theft charge constituted a qualifying crime under Laken Riley. (*See id*.) In doing so, ICE issued its own Form I-200 "Warrant for Arrest of Alien" indicating that ICE had probable cause to believe that Petitioner was removable. (*Id*.; *see* Doc. 2-3 at 32.)

1:25-CV-01309-JLT-SKO (HC) (E.D. Cal. Oct. 16, 2025); *Ortiz Donis v. Chestnut,* No. 1:25-CV-01228-JLT-SAB (HC), 2025 WL 32879514 (E.D. Cal. Oct. 9, 2025); *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT (HC), 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185 (E.D. Cal. Sept. 5, 2025); *Aguilera v. Albarran*, No. 1:25-CV-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025); *Garcia v. Chestnut*, No. 1:25-CV-01907-JLT-CDB, 2025 WL 3771348 (E.D. Cal. Dec. 31, 2025); *Carlos v. Chestnut*, No. 1:26-CV-00007-JLT-SKO (HC), 2026 WL 145889 (E.D. Cal. Jan. 20, 2026). Accordingly, Petitioner's re-detention without a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment.

Respondents further argue that Petitioner's recent encounter with law enforcement and pending criminal charges "violated the conditions of his release" and constitute a "change in circumstances" showing that Petitioner is "no longer entitled to [] release[]." (Doc. 8 at 1, 2–4.) To the extent Respondents rely on the Laken Riley Act as the detention authority in this case, the Court finds that Laken Riley does not apply. While deportation officers concluded that Petitioner's pending charges constituted "qualifying criminal charges under the Laken Riley Act," which formed the basis for Petitioner's custody redetermination interview and ultimate arrest, (*see* Doc. 8-1 at 4), it is unclear how charges for identity theft and providing false information to a police officer fall under Laken Riley's enumerated crimes, nor do Respondents provide any argument or cite any caselaw in that regard. (*See* Doc. 8 at 1–4.) The Laken Riley Act, passed by Congress in January 2025, "amended [8 U.S.C.] § 1226(c) to subject additional categories of noncitizens who have had interactions with law enforcement to mandatory detention without a bond hearing." *Yesil v. Chestnut*, *et al.*, No. 1:26-cv-01758-DC-AC, 2026 WL 834066, at *3 (E.D. Cal. Mar. 26, 2026) (citing Pub. L. No. 119-1, 139 Stat. 3 (2025)). Specifically, the Laken Riley Act, codified in 8 U.S.C. § 1226(c)(1)(E), states that detention is mandatory for any noncitizen who:

> (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> (E)(ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing **acts which constitute**

**the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person**, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E) (emphasis added).

Assuming Respondents argue that an arrest for identity theft and providing false information to a police officer under California Penal Code §§ 530.5(a) and 148.9(a) qualifies as an act of "theft" under the Laken Riley Act, this Court has not found, and Respondents do not cite, any controlling caselaw to support that proposition. The few cases in this district that have dealt with theft-related arrests in the context of Laken Riley involve clear property offenses, but not identity theft. *Cf. Singh v. Wofford, et al.*, No. 1:26-cv-01161-KES-EPG, 2026 WL 972547, at *1–2 (E.D. Cal. Apr. 10, 2026) (dealing with an arrest for felony grand theft for receiving stolen property and possessing a stolen vehicle and finding that because petitioner's charges were dropped, he was not subject to mandatory detention under § 1226(c)(1)(E)); *Rohit Lnu v. Chestnut, et al.*, 1:26-cv-00016-JLT-SAB, 2026 WL 395882, at *1, 4 (E.D. Cal. Feb. 12, 2026) (dealing with an arrest for petty theft in violation of Cal. Pen. Code § 484(a) and denying injunctive relief because such arrest appeared on its face to qualify as an enumerated crime under Laken Riley), *report and recommendation adopted in full*, 2026 WL 623148, at *1 (E.D. Cal. Mar. 5, 2026); *Haryana-Sandhir v. Warden Golden State Annex, et al.*, No. 1:26-cv-00405-DJC-SCR, 2026 WL 221372, at *1–2 (E.D. Cal. Jan. 28, 2026) (dealing with an arrest for burglary and grand theft and denying injunctive relief because "these qualifying theft offenses plainly trigger[] the application of § 1226(c)(1)(E)(ii)").

Instead, a natural reading of the statute suggests that only crimes expressly enumerated in the statute qualify for mandatory detention. *See Botosan v. Paul McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000) ("The incorporation of one statutory provision to the exclusion of another must be presumed intentional under the statutory canon of *expressio unius*."). The statute does not list identity theft or providing false information to a police officer as a qualifying crime. Rather, the statute only cites "burglary, theft, larceny, shoplifting, or assault of a law

enforcement officer offense, or any crime that results in death or serious bodily injury." 8 U.S.C. § 1226(c)(1)(E). The first four enumerated crimes are all property-related offenses, and the last two crimes involve assault to a police officer and aggravated battery. *Id*.

The relevant identity theft statute at issue reads: "Every person who willfully obtains personal identifying information, as defined in subdivision (b) of Section 530.55, of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense . . . ." Cal. Pen. Code § 530.5(a). Section 530.55(b) reads: "For purposes of this chapter, 'personal identifying information' means any name, address, telephone number, health insurance number, taxpayer identification number, school identification number, state or federal driver's license, or identification number, social security number, place of employment, employee identification number, professional or occupational number, mother's maiden name, demand deposit account number, savings account number, checking account number, PIN or password, United States Citizenship and Immigration Services-assigned number . . . ." Cal. Pen. Code § 530.55(b).

Even if this Court construed Cal. Pen. Code § 530.5(a) as a property-related theft under the Laken Riley Act, Respondents provide no details regarding the incident or even allege that the incident involved an unlawful attempt to steal goods, services, or real property belonging to another person. (Doc. 8 at 1–4; Doc. 8-1 at 4, 9–11); *see Yesil*, 2026 WL 834066, at *3 (rejecting the government's argument that petitioner's arrest for misdemeanor battery of a spouse fell under Laken Riley, in part, because the government failed to provide any details regarding the incident or even allege that the altercation resulted in serious bodily injury). Instead, the record indicates that Petitioner was charged with both identity theft and giving false information to a police officer. (Doc. 8-1 at 9.) The relevant statute for providing false information to a police officer states: "Any person who falsely represents or identifies himself or herself as another person or as a fictitious person to any peace officer . . . , upon a lawful detention or arrest of the person, either to evade the process of the court, or to evade the proper identification of the person by the investigating officer is guilty of a misdemeanor." Cal. Pen. Code § 148.9(a). Thus,

it is unclear whether the facts underpinning Petitioner's arrest involve theft of property through the unauthorized use of another person's identity, or merely the theft of another person's identity for purposes of evading or obstructing an arrest. As such, on this record, mandatory detention under 8 U.S.C. § 1226(c)(1)(E) does not apply.

Nonetheless, the Court finds that the appropriate remedy is a post-deprivation bond hearing where the government bears the burden of proving that Petitioner now poses a danger to the community or flight risk. This is because one of Petitioner's conditions of release was that he "not violate any local, State, or Federal laws or ordinances." (*See* Doc. 2-3 at 22.) Petitioner was recently charged with violating Cal. Pen. Code §§ 530.5(a) and 148.9(a). (Doc. 8-1 at 9–10.) The record further indicates that Petitioner failed to appear for his arraignment and that a warrant is out for his arrest, all of which occurred prior to his detention by ICE. (*Id*. at 11; *see also* Doc. 8-1 at 4.) In his reply, Petitioner fails to explain why he missed the arraignment or otherwise contest these allegations. (*See* Doc. 9.) Considering Petitioner's recent criminal charges and failure to appear at his arraignment, which arguably violates a condition of release, (*see* Doc. 2-3 at 22), the Court concludes that a bond hearing is appropriate. *See Singh v. Chestnut, et al.*, No. 1:26-cv-00546-DJC-AC, 2026 WL 266021, at *2, 4 (E.D. Cal. Feb. 2, 2026) (ordering a post-deprivation bond hearing for a petitioner who was formerly released on his own recognizance but detained by ICE after he was arrested for aggravated battery—despite finding that petitioner was not subject to mandatory detention under Laken Riley—because the government "may well have a legitimate interest in [p]etitioner's detention based on the information contained in the arrest report"); *J.S.H.M. v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, at *14–16, 18 (E.D. Cal. Oct. 16, 2025) (ordering a post-deprivation bond hearing where petitioner had multiple infractions of his conditional release order).

For the foregoing reasons, the Court **ORDERS**:

1.      The petition for writ of habeas corpus (Doc. 1) is **GRANTED IN PART**.

2.      The motion for temporary restraining order (Doc. 2) is **DENIED** as **MOOT**.

3.      **Within 14 days** of the date of service of this order, unless Petitioner consents to a later date, Respondent **SHALL** provide Petitioner with an individualized bond hearing before an

7

immigration judge that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," *id.* at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017). If Respondents fail to provide a timely bond hearing in accordance with this order, Respondents are ordered to immediately release Petitioner.

4.     Prior to the bond hearing, the Petitioner and his counsel **SHALL** receive meaningful notice of the scheduled hearing and both **SHALL** be entitled to appear at the hearing.

5.     The Clerk of Court is directed to serve the California City Detention Center in California City, California with a copy of this Order.

6.     The Clerk of Court is directed to close this case and enter judgment for Petitioner.

IT IS SO ORDERED.

Dated:   **May 13, 2026**

UNITED STATES DISTRICT JUDGE